NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ORLANDO P., | Case No. 21cv20186 (EP) |
| Plaintiff, | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**PADIN, District Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), following Plaintiff Orlando P.'s application for supplemental security income ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals the final decision of the Commissioner of Social Security denying that application. The Court having considered the entire record, including the administrative record, now decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On September 9, 2019, Plaintiff filed an SSI application, alleging that he has been disabled since January 4, 2019. D.E. 5 "R." 12. Plaintiff's claim was initially denied on January 7, 2020, and again upon reconsideration on July 25, 2020. *Id.* Plaintiff subsequently filed a written request for a hearing before an administrative law judge ("ALJ"),[1] which was held, telephonically, on

---

[1] "ALJ" references are specific to ALJ Kevin Kenneally.

January 8, 2021. *Id.* Plaintiff, who was represented by counsel, and Peter Manzi, a vocational expert ("VE"), testified at that hearing. *Id.* On February 10, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 21.

On September 20, 2021, the Appeals Council denied Plaintiff's request for review. R. 1-6. As a result, the ALJ's decision became final. *Id.* Plaintiff appealed to this Court pursuant to 42 U.S.C. § 405(g). D.E. 1. Being fully-briefed, this matter is ripe for the Court's decision.

## II.        LEGAL STANDARD

### A.  Standard of Review

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). But the Court's review of a Commissioner's decision is limited in scope and is deferential. *See Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 431 (3d Cir. 1999); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted). When reviewing an administrative decision denying social security benefits, the Court must uphold any factual determination made by the ALJ, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). The Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. *Chandler v. Comm'r or Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Instead, the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the record, as a whole, contains substantial evidence supporting the ALJ's findings of fact. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence requires "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552; *see also Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Specifically, it requires such relevant evidence as a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). But the threshold for substantial evidence in this context is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

Nevertheless, this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.3d 110, 114 (3d Cir. 1983). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997). While the ALJ's analysis need not be structured in a particular manner, his decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted). And from the ALJ's decision, the Court must be able to make out what evidence was considered and what evidence was rejected and why. *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981); *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) ("[I]n most cases, a sentence of short paragraph" as to why ALJ rejected certain evidence "would probably suffice."). Following this review, the Court may enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B. Applicable Five-Step Sequential Evaluation Process for SSI Benefits**

The Social Security Administration has established a five-step sequential evaluation process to determine whether an individual is disabled, within the meaning of the Social Security Act, and thus entitled to SSI. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). But if the Commissioner finds that a claimant, like Plaintiff, is disabled or is not disabled at any step in the sequential evaluation, then review does not proceed any further. *See* 20 C.F.R. §§ 404.1520, 416.20. Under this evaluation process, a claimant is entitled to SSI if he has a physical and/or mental impairment of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity, which exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The claimant bears the burden of proof with respect to steps one through four. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). Step one requires that the ALJ determine whether the claimant has engaged in any "substantial gainful activity" since the onset of his alleged disability. 20 C.F.R. § 404.1520(a), (b). If the answer is yes, then the inquiry ends because the claimant is not disabled.

Step two requires that the ALJ determine whether the claimant suffers from a "severe impairment" or "combination of impairments." 20 C.F.C. § 404.1520(a), (c). If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

Step three requires that the ALJ determine whether the claimant's impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listed Impairment"). 20 C.F.R. § 404.1520(a), (d). If the answer is yes, then the claimant is presumed to be disabled

and is automatically entitled to SSI.  20 C.F.R. § 404.1520(d).  But if he does not, then the evaluation proceeds to steps four and five.  *Seabon v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 85938, at *11 (D.N.J. July 25, 2011).

Step four requires two sub-steps.  First, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is defined as "that which an individual is still able to do despite the limitations caused by his [] impairments."  20 C.F.R. §§ 404.1520(e), 416.920(e).  In determining the claimant's RFC, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments. 20 C.F.C. §§ 404.1545(a)(2), 416.945(a)(2).  Second, the ALJ must determine whether the claimant's RFC prevents him from doing his past relevant work.  20 C.F.R. § 404.1520(a), (f).  If the claimant is able to return to his past relevant work, then he is not disabled, but if the opposite is true, then the evaluation proceeds to step five.  *Id.*

The Commissioner bears the burden of proof with respect to step five.  20 C.F.R. § 404.1520(f); *Poulos*, 474 F.3d at 92.  Step five requires that the ALJ determine whether the claimant can perform other substantial work.  20 C.F.R. § 404.1520(a), (g).  The answer is yes if work exists in significant numbers in the national economy that the claimant can perform, given his medical impairments, age, education, past work experience, and RFC.  *Id.*  If this is true, then the claimant is not disabled and is thus not eligible for SSI.  20 C.F.R. § 404.1520(f).

## III.   ALJ DECISION AND ISSUES ON APPEAL

Plaintiff was born on September 29, 1978.  R. 20.  He was 40 years old when he filed his SSI application.  *Id.*  Plaintiff completed eighth grade before the onset of his alleged disability.  R. 284.  Plaintiff has a limited employment history with minimal earnings; specifically, Plaintiff worked at a collection agency and at a scrapyard.  R. 188.  Plaintiff's alleged disability results

from the following impairments: type 2 diabetes, schizophrenia, depression, insomnia, and anxiety.  R. 75.

In this case, the ALJ reached step five, and concluded that, even taking into account Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), a significant number of jobs existed in the national economy that Plaintiff could perform.  Accordingly, Plaintiff was found not disabled, within the meaning of the Social Security Act, and thus was not entitled to SSI.

Specifically, the ALJ made the following conclusions at each step.  At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since September 9, 2019, the application date[.]"  R. 14.

At step two, the ALJ found that Plaintiff "has the following severe impairments: polysubstance abuse disorder; major depressive disorder; schizoaffective disorder, bipolar type; generalized anxiety disorder; asthma; hypertension diabetes mellitus; obesity; pericardial effusion; degenerative disc disease of the lumbar spine; right fibular fracture status post closure; a left ankle impairment; and colitis."  *Id.*  And these "medically determinable impairments significantly limit the ability to perform basic work activities[.]"  *Id.*

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listed Impairment.]"  R. 14.  In reaching this conclusion, the ALJ considered, *inter alia*, Plaintiff's asthma, hypertension and pericardial effusion, diabetes, back disorder, ankle impairment, obesity, and mental impairments. R. 14-16.

At step four, in determining Plaintiff's RFC, the ALJ found that Plaintiff

> has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except for the following limitations: he can occasionally push, pull, and

> operate foot controls with the left lower extremity; he can never push, pull, or operate foot controls with the right lower extremity; he can occasionally push, pull, and operate hand controls with the bilateral upper extremities; he can occasionally climb ramps and stairs; he can never climb ropes, ladders, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he can never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle; he can have only occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat; he must have access to a bathroom at the work site; he is limited to performing simple routine tasks and making simple work related decisions; he can never interact with the general public and must deal with things rather than people; and he can occasionally interact with coworkers and supervisors.

R. 16-17. In making this finding, the ALJ took into consideration Plaintiff's impairments, as well as the lack of complications from these impairments. R. 16-20 (for example: "[t]he record indicates pulmonary testing consistent with moderate asthma[.] The claimant has also been diagnosed with hypertension [] but the record does not document complications[,]" and "[a]n exam note of April 2018 indicates that the claimant reported auditory hallucinations but had a normal mental status examination[.] By October 2018, the claimant reported feeling better and likewise had a normal exam[.]"). The ALJ also found that Plaintiff "has no past relevant work [.]" R. 20.

Finally, at step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC,] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]" *Id.* In reaching this conclusion, the ALJ relied on the VE's testimony that given all of these factors, an individual

> would be able to perform the requirements of representative occupations such as table worker (unskilled sedentary work (SVP 2) with 10,184 jobs in the national economy), lens inserter (unskilled sedentary work (SVP 2) with 23,690 jobs in the national economy), and general assembler (unskilled sedentary work (SVP 2) with 10,014 jobs in the national economy).

R. 20-21.

Plaintiff disagrees with the RFC determination at step four and the ALJ's reliance on the VE's testimony at step five and now asks that the ALJ's decision be vacated and remanded for further proceedings.  D.E. 10 "Br." at 6, 7, 11.  The Commissioner responds that the Court should affirm that decision because it takes into consideration governing legal standards, considers the entire record, and is supported by substantial evidence.  D.E. 11 "Opp'n" at 15, 18, 20, 30.

## IV.    MEDICAL TREATMENT AND HEARING TESTIMONY

### A.  Medical Treatment Prior to Alleged Disability Onset

In 2018, Plaintiff sought treatment with his primary care provider, David Yorio, M.D., for the following conditions: type 2 diabetes, chronic obstructive pulmonary disease ("COPD"), cervical disc degeneration, and Vitamin D deficiency.  R. 427, 429, 432, 436, 440, 443-44, 446, 449-50.  He was prescribed a series of medications for these conditions.  *Id.*  On multiple occasions, Plaintiff reported non-compliance with his prescribed medications to Dr. Yorio.  R. 434, 438, 442, 445, 448.  He attributed this non-compliance to his depression.  *Id.*  At this time, Plaintiff reported that he was not keeping track of his sugars, something that was necessary due to his diabetes.  *See id.*  Plaintiff also reported back pain, but denied experiencing other symptoms, such as, *inter alia*, change in bowel habits, abdominal pain, nausea, vomiting, chest pain, and headaches.   R. 435, 439, 443, 446, 449.  Lastly, Plaintiff reported that he smoked five or less cigarettes for the last 15 years, but that he was considering quitting.  R. 446.

On November 1, 2018, Dr. Yorio opined that Plaintiff could not lift or carry any weight; could sit, stand, and walk for zero minutes per day; needed a cane to ambulate; could never reach,

handle, feel, finger, push/pull; never operate foot controls; never perform any postural movements; and never be exposed to environmental conditions.  R. 451-56.

**B.  Medical Treatment During Relevant Period**

On January 29, 2019, Plaintiff sought treatment at St. Joseph's Emergency Room for syncope and a right ankle fracture.  R. 709, 719.  Plaintiff tested positive for PCP at this time.  R. 709.  The diagnostic tests performed on Plaintiff showed no abnormalities, except for mild spondylitic degenerative changes at L4-L5 and L5-S1, R. 709-10, a mild asymmetrical disc bulge at C6-C7, a mild left ventricular hypertrophy and moderate pericardial effusion, R. 711, and a commuted distal fibular fracture, R. 713.  A physical examination showed that Plaintiff had 5/5 strength and intact sensation throughout, with a cast on his fracture.  R. 713.

On March 4 and 5, 2019, Plaintiff sought treatment at St. Joseph's Emergency Room for a complicated right foot wound after wearing a cast for his fracture.  R. 716, 787.  Plaintiff's cast was removed.  R. 716.  He was also prescribed certain medications for his wound infection and to control his elevated sugar levels.  *Id.*  On March 13, 2019, Plaintiff was discharged.  *Id.*

In November and December 2019 and January 2020, Plaintiff sought treatment for his diabetes, back pain, and ankle pain, with Dr. Yorio.  R. 698, 701, 704.  Specifically, Plaintiff reported pain in his right ankle following a fall, back pain while lifting, bending, and doing activities, intermittent chest pain (but none at the time of the appointments).  *Id.*  Plaintiff indicated that he was still able to do his usual activities.  R. 699, 702.  He had no signs of fainting, seizures, and weakness, and had good coordination, memory, and speech.  *Id.*  His right foot fracture was healed.  R. 698, 701, 704.  The following abnormalities were noted: BMI between 35.72 and 36.15; positive tenderness in certain areas of his back; and limping gait due to pain.  R. 699, 702.  Plaintiff's prescribed medications were refilled as needed.  R. 700, 702-03, 705-06.

On December 5, 2019, Plaintiff was examined by Alexander Hoffman, M.D.  R. 503. Plaintiff reported the following issues: asthma and occasional shortness of breath, uncontrolled diabetes, hypertension but without any cardiac manifestations of chest pain or heart failure, diverticulitis, back and shoulder pain due to previous scrapyard work, and past drug use issues. *Id.*  During Plaintiff's examination, the following was noted: moderately obese male; normal gait; cooperative; able to follow directions and no untoward behavior; chest was clear to percussion and auscultation; regular heart rate and rhythm; soft abdomen without voluntary guarding; normal flexion of toes and knee; complaint of pain in right leg when raising leg; 5/5 grip strength, biceps, and triceps strength; full range of motion at wrist, elbow, and extension and abduction; can bend at waist; and does not walk very well on heel or toe.  R. 503-04.  Plaintiff's uncontrolled diabetes was also noted.  R. 504.

On February 20, 2020, Plaintiff sought treatment at St. Joseph's Emergency Room for abdominal pain and bloody stool after straining for bowel movement.  R. 627, 633.  No additional diagnoses were made, except for mild left hydronephrosis of the left kidney.  R. 633.  It was also noted that Plaintiff had previous surgery for diverticulitis requiring colostomy, which was later reversed.  *Id.*

On April 10, 2020, Plaintiff was brought to St. Joseph's Emergency Room for medical and psychiatric clearance before going to county jail.  R. 817.  At this time, Plaintiff displayed aggressive behavior.  R. 818.  No additional diagnoses were made.  *Id.*  Plaintiff tested positive for PCP.  R. 819.

On April 22, 2020, Plaintiff was examined by Dr. Yorio for his diabetes, back pain, and ankle pain.  R. 1004.  Plaintiff reported the same issues as he did during his visit in January 2020.

R. 1004-05.  No additional diagnoses were made.  *Id.*  Plaintiff's prescribed medications were refilled as needed.  R. 1005-06.

On May 4 and 30, 2020, Plaintiff again returned to St. Joseph's Emergency Room.  R. 866, 1126.  His first visit was due to a finger laceration resulting from a knife altercation.  R. 866.  Plaintiff tested positive for PCP.  R. 898.  His second visit was due to right flank pain, which an x-ray suggested was due to constipation.  R. 1130.

In June, August, October, and November 2020, Plaintiff returned to see Dr. Yorio.  Plaintiff repeated previous complaints of right ankle pain, back pain, and intermittent chest pain, but that he was still able to do his usual activities.  R. 1078-79, 1081-82, 1084-85, 1087-88, 1091-92.  No additional diagnoses were made, but Dr. Yorio did note tenderness in Plaintiff's paraspinal muscles and midline and a limping gait due to pain.  R. 1079, 1082, 1085, 1088, 1092.  Plaintiff's prescribed medications were refilled as needed.  R. 1082-83, 1085, 1088-89, 1092-93.

On September 8 and November 14, 2020, Plaintiff again returned to St. Joseph's Emergency Room.  R. 1117, 1101.  His first visit was due to toe pain and bilateral leg pain after hitting the side of his bed and falling four days earlier.  R. 1117-18.  But Plaintiff reported no back or neck pain on this occasion.  *Id.*  His second visit was due to constipation.  R. 1101.  It was noted that his gait was steady, his range of motion was normal, he had no mechanical bowel obstruction, and potentially colitis.  R. 1110.

### C.  State Agency Reviewers

On December 16, 2019, Esther Tomor, M.D., reviewed the record on behalf of the state agency and concluded that the record documented schizophrenia spectrum and other psychotic disorders; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders.  R. 78.  Dr. Tomor concluded that the following limitations existed with respect to

Plaintiff's ability: to interact with others: "mild;" to concentrate, persist, or maintain pace: "mild;" and to adapt or manage oneself: "moderate." *Id.* Furthermore, Dr. Tomor concluded that Plaintiff had exertional limitations. R. 79. Specifically, Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds; and Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and could sit (with normal breaks) for a total of about six hours in an eight-hour workday. R. 79. Dr. Tomor found that Plaintiff had no manipulative limitations. *Id.* But that Plaintiff did have environmental limitations; specifically, that he should avoid concentrated exposure of fumes, odors, dusts, gases, poor ventilation and should avoid even moderate exposure of hazards. *Id.* Based on Dr. Tomor's cumulative findings, she concluded that Plaintiff could perform a range of light work. R. 82.

On May 29, 2020, Mohammad Rizwan, M.D., reviewed the record on reconsideration by the state agency and reaffirmed Dr. Tomor's original findings. R. 87-88. In so doing, Dr. Rizwan concluded that Plaintiff could perform a range of light work. R. 88.

### D. Plaintiff's Testimony

On January 8, 2021, Plaintiff testified on his own behalf before the ALJ. *See* R. 30-40. Plaintiff testified that he suffers from pain in his chest, back, and both feet, including in his right ankle, which was previously fractured. R. 35-36. Plaintiff added that he also suffers from asthma, but that he takes medication for it. *Id.* When the ALJ asked Plaintiff how far he can walk until he has to stop, Plaintiff responded, "[m]aybe like one, two steps;" and when asked how long he can walk, Plaintiff responded, "[m]aybe like a minute." R. 36. When the ALJ asked Plaintiff what activities he typically does, Plaintiff responded that he talks to his family, watches television, and uses his phone. R. 36-37. With respect to his diabetes, Plaintiff testified that he takes insulin and other medication. R. 38. Plaintiff also reported having difficulty sleeping, but that he takes

medication for that issue.  R. 39.  Lastly, Plaintiff also testified to hearing voices—but did not want

to elaborate on this point—and that he panics when he is around people because he gets scared and

does not like talking around people.  R. 32-33.

### E.  VE's Testimony

On January 8, 2021, Peter Manzi, a VE, also testified at the hearing before the ALJ.  *See*

R. 41-52.  The first hypothetical individual posed to the VE had the following characteristics:

> Hypothetical #1 is we're going to assume a hypothetical individual of the claimant's age, education, and work experience who can perform the full range of sedentary work as defined in the regulations except can occasionally push, pull, operate foot controls with the left lower extremity. Can never push, pull, operate foot controls with the right lower extremity. Can occasionally push, pull, operate hand controls with the bilateral upper extremities.  Can occasionally climb ramps and stairs but can never climb ropes, ladders, scaffolds.  Can occasionally balance, stoop, kneel, crouch, and crawl.  Can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle.  Only occasional exposure to humidity wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat.  Must have access to a bathroom at the worksite.  Is limited to performing simple routine tasks and making simple work-related decisions.  Can never interact with the general public.  Must deal with thing rather than people.  And can occasionally interact with coworkers and supervisors.

R. 42-43.

With respect to this hypothetical individual, the VE concluded that the following jobs exist

in the national economy: 10,184 jobs as a table worker (739.687-182), which is classified as

"[s]edentary, unskilled, SVP of 2" in the DOT, R. 43; 23,690 jobs as a lens inserter (713.687-026),

which is classified as "[s]edentary, unskilled, SVP of 2" in the DOT, R. 44; and, 10,014 jobs as a

general assembler (734.687-018), which is classified as "sedentary, unskilled, SVP of 2" in the

DOT, R. 44.  After the VE identified lens inserter as an available existing job, but before he

identified general assembler as an available existing job, the VE asked the ALJ if there were any

manipulative restrictions.  R. 44.  The ALJ responded that there were none.  *Id.*

The second hypothetical posed to the VE had the same characteristics as the first, but with the added characteristic that "in addition to normal breaks would be off task 20% of the time in an eight-hour workday." *Id.* The VE concluded that the jobs he identified for the first hypothetical individual would be unavailable for this hypothetical individual due to the 20% off-task time. R. 45.

The third hypothetical posed to the VE had the same characteristics as the first, but with the added characteristic that he would be "absent from work two days a month." *Id.* The VE concluded that the jobs he identified for the first hypothetical individual would still be available, so long as the latter did not have additional absences beyond the two days per month. R. 45-46.

Before the end of the hearing, the ALJ asked the VE whether his testimony was consistent with the information found in the DOT and the SCO[2], with any exceptions that he already noted. R. 52. The VE answered in the affirmative. *Id.*

V.   **DISCUSSION**

Plaintiff challenges the ALJ's determination that he was not disabled under the Social Security Act. Plaintiff raises two arguments: (1) the ALJ's conclusion at step five that jobs exist in the national economy is flawed because the hypothetical posed to the VE did not contemplate all of Plaintiff's limitations, and, as such, the VE's testimony was inconsistent with the DOT; and (2) the ALJ erred in determining Plaintiff's RFC at step four because the ALJ failed to provide substantial evidence as to why further deviation from the medical evidence was not warranted. The Court will address each argument in turn.

A.  **The ALJ's Reliance on the VE's Testimony to Determine that Plaintiff Could Perform Other Jobs Existing in the National Economy is Supported by Substantial Evidence**

---

[2] Selected Characteristics of Occupations.

Plaintiff first contends that the three jobs that the VE identified run afoul of Plaintiff's RFC because those jobs involve frequent or constant reaching[3] and Plaintiff's RFC limits him to occasionally pushing, pulling, and operating hand controls with the bilateral upper extremities.  Br. at 6-7.   According to Plaintiff, the limitations included in his RFC facially conflict with the Dictionary of Occupational Titles' ("DOT") reaching requirements for the jobs that the VE cited. *Id.* at 7.    Defendant responds that Plaintiff conflates "exertional" capabilities, which include pulling, pushing, and operating hand controls, with "manipulative" functioning, which includes reaching.  Opp'n at 16.  Because the two are distinct, Defendant argues that the ALJ's reliance on the VE's findings, which contemplated exertional limitations, was appropriate.  The Court agrees with Defendant.

As previously mentioned, at step five, the ALJ must determine whether a significant number of jobs exist in the national economy that the claimant can perform, given his medical impairments, age, education, past work experience, and RFC.  20 C.F.R. § 404.1520(g).  VE testimony is often sought and is permissible at this step.  *See* 20 C.F.R. § 404.1520(e).  "Testimony of [VEs] in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert."  *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy."  *Zirnsak* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218).

But "[w]hile 'the ALJ must accurately convey to the [VE] all of a claimant's credibly established limitations,' [w]e do not require an ALJ to submit to the [VE] every impairment alleged by a claimant.'"  *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting

---

[3] Table worker (DOT 739.687-182, 1991 WL 680217), lens inserter (DOT 713.687-026, 1991 WL 679272), and general assembler (DOT 734.687-018, 1991 WL 679950).

*Rutherford*, 399 F.3d at 554).  "Credibly established limitations are limitations 'that are medically supported and otherwise uncontroverted in the record.'"  *Lisa C.M.*, 2022 U.S. Dist. LEXIS 143471, at *44 (quoting *Rutherford*, 399 F.3d at 554).  "'Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason.'"  *Id.* (quoting *Rutherford*, 399 F.3d at 554) (citations omitted).  In summary, when an ALJ poses a hypothetical question to a VE, his question must accurately portray the claimant's credibly established physical and mental limitations that are supported by the record; otherwise, "the question is deficient and the expert's answer to it cannot be considered substantial evidence."  *Id.* (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)); *Podedworny*, 745 F.2d at 218.

Furthermore, when VE testimony is elicited, the ALJ is required, under SSR 00-4p, 2000 SSR LEXIS 8, to: (1) ask, on the record, whether a VE's testimony is consistent with the DOT; (2) elicit a reasonable explanation where an inconsistency appears; and (3) explain in his decision how the conflict is resolved.  *Zirnask v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014).  But "the presence of inconsistencies does not mandate remand, unless substantial evidence is lacking in other portions of the record that can form an appropriate basis to support the result."  *Gillespie v. Kijakazi*, 2022 U.S. Dist. LEXIS 158965, at *37-38 (D.N.J. Sept. 2, 2022) (citing *Zirnsak*, 777 F.3d at 617) (internal citation omitted).

Here, VE testimony was elicited.  The ALJ satisfied his duty under SSR 00-4p when he asked the VE whether his testimony was consistent with the DOT and the SCO, with any exceptions noted, and the VE responded in the affirmative.  R. 52.  That the ALJ responded in the negative when the VE asked whether the first hypothetical individual had any manipulative

16

limitations did not create an inconsistency between the jobs that the VE identified and the DOT. *See* R. 44. The reasoning for this is simple: the RFC determination contemplated that Plaintiff had exertional limitations, but did not contemplate any non-exertional limitations related to manipulative functions; the first hypothetical individual that the ALJ presented to the VE had the same exertional limitations as those contemplated in Plaintiff's RFC determination; the VE took into consideration the exertional limitations of the first hypothetical individual when he identified three jobs from the DOT that the hypothetical individual could do; and as such, the VE's testimony and the DOT were consistent. The Court will explain why there was no inconsistency.

Neither Plaintiff's RFC nor the first hypothetical individual contemplate manipulative limitations. *See* R. 16-17, 42-43. Both Plaintiff's RFC and the first hypothetical individual contemplate exertional limitations. *See id.* Exertional limitations are those that "affect [a claimant's] ability to meet the strength demands of jobs[,]" such as a claimant's "ability to sit, stand, walk, lift, carry, push and pull." 20 C.F.R. §§ 404.1569a(a)-(b), 404.1545(b). Additionally, Appendix C to the SCO identifies three elements for determining a claimant's strength level, including "Controls: Hand-Arm and Foot-Leg." D.E. 11-1 at 2. This element is defined as "[c]ontrols [that] entail use of one or both arms or hands (hand-arm) or one or both feet or legs (foot-leg) to move controls on machinery or equipment…" *Id.* In contrast, non-exertional limitations include, *inter alia*, "manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(vi). Based on this guidance alone, the limitations of "occasionally pushing, pulling, and operating hand controls with the bilateral upper extremities" that were included in Plaintiff's RFC and described to the VE are squarely exertional limitations.

Plaintiff argues that the VE's three jobs violate his RFC's exertional limitations because they involve reaching.  Br. at 6-7; D.E. 12 "Reply" at 1-2.  There are two flaws with Plaintiff's logic.  First, reaching is a manipulative, not an exertional limitation, which Plaintiff's RFC does not prohibit.  Thus, that a job identified by the VE requires reaching does not create an inconsistency with the DOT.  Second, the DOT's descriptions for table worker, lens inserter, and general assembler are silent as to whether they involve reaching.  *See* DOT 739.687-182, 1991 WL 680217, DOT 713.687-026, 1991 WL 679272, DOT 734.687-018, 1991 WL 679950.  Thus, even if the VE should have considered that Plaintiff had a manipulative limitation, with respect to reaching, the three jobs the VE identified would not run afoul of that limitation as "[i]t is well established in this circuit that '[w]here the DOT is silent on an issue,…a conflict does not exist.'" *See William I.B. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 33336, at *14 (D.N.J. Feb. 24, 2022) (quoting *Kowal v. Saul*, 2020 U.S. Dist. LEXIS 16998, at *6 (W.D. Pa. Jan. 30, 2020) (collecting cases); *see also Wecklerlin v. Berryhill*, 2017 U.S. Dist. LEXIS 142911, at *12 (E.D. Mo. Sept. 5, 2017) ("[T]he Court is persuaded by the reasoning of several district and circuit court case holding that the DOT's silence as to a functional limitation does not create a conflict between the DOT and the VE's testimony, and therefore does not require further inquiry by the ALJ.") (citations omitted).

Accordingly, because the VE's testimony was consistent with the DOT, the ALJ's reliance on that testimony in step five is supported by substantial evidence.

**B.  The ALJ's RFC Determination is Supported by Substantial Evidence**

Next, Plaintiff contends that the ALJ erred in making his RFC determination because it is not supported by substantial evidence.  Br. at 7-9.  Specifically, Plaintiff asserts that while the ALJ correctly deviated from the State Agency's medical opinions that the ALJ failed to provide

substantial evidence that further deviation was not warranted in his ultimate RFC determination. *Id.* Defendant responds that the ALJ did not err because the ALJ appropriately considered the entire record in determining Plaintiff's RFC. Opp'n at 20. Defendant adds that controlling regulations and Third Circuit authority require only that the ALJ, not a physician, makes the ultimate RFC determination. *Id.* at 20-21. The Court agrees with Defendant.

A claimant's RFC is the most that the claimant is able to do given his limitations. 20 C.F.R. § 404.1545(a)(1). It is the ALJ who determines the claimant's RFC. 20 C.F.R. § 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). In making this determination, the ALJ must consider all of the evidence present before him on the record. *Plummer v. Apfel*, 186 F.3d at 429. But only "credibly established" limitations need be considered. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (citation omitted). The ALJ's analysis may include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record," so long as he provides his reasoning. *Lisa C.M.*, 2022 U.S. Dist. LEXIS 143471, at *23 (citing *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). Furthermore, the ALJ may also include "a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible." *Id.* (citing *Zirnsak*, 777 F.3d at 615).

In finding that Plaintiff had an RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except for certain limitations, the ALJ considered the record evidence before him. This included Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical or other evidence based on 20 C.F.R. § 416.929 and SSR 16-3p, as well as medical opinions and prior administrative medical findings in

accordance with the requirements of 20 C.F.R. 416.920c. R. 17. The Court notes that the ALJ's consideration of this evidence was significant.

In considering Plaintiff's symptoms, the ALJ followed a two-step process, which involved: (1) "determining whether there is an underlying medically determinable physical or mental impairment(s) [] that could reasonably be expected to produce [Plaintiff's pain or other symptoms];" and (2) "evaluat[ing] the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities. [But where these statements] are not substantiated by objective medical evidence," then the ALJ "must consider other [record] evidence to determine if [Plaintiff's] symptoms limit the ability to do work-related activities." R. 17.

Following this two-step process, the ALJ considered Plaintiff's testimony that: he could not work because he panics around people; he hears voices and has difficulty getting out of the house; he walks one to two steps and can stand for one minute; he lives with his sister who cooks for him; and he sleeps one to two hours per night and does not sleep during the day. *Id.* Ultimately, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other [record evidence] for the reasons explained in this decision." *Id.* Specifically, the ALJ concluded that the "record indicates that [Plaintiff's] treatment for physical impairments has been conservative with medication management, and many issues are controlled and/or asymptomatic." *Id.* And Plaintiff's "mental limitations are moderate in nature except for interaction [] and otherwise stable exams when claimant is in treatment. This supports the finding

20

that the claimant can perform a reduced range of sedentary work that is unskilled and isolated." R. 17-18.

In reaching these conclusions, the ALJ considered a substantial amount of record evidence, concerning Plaintiff's symptoms and made conclusions as to whether Plaintiff continued to suffer from those symptoms or whether they were controlled.  *See* R. 17-19.

The ALJ also considered medical opinions and administrative medical findings in the record and the made the following conclusions:

> The state agency consultants opined that the claimant can perform a reduced range of light work and has moderate mental limitations (C4A-C5A). The mental limitations are consistent with the record and are persuasive. However, the physical opinion is unpersuasive because the claimant is further limited to a reduced range of sedentary work.

> Dr. Yorio opined that the claimant cannot do any work activity, even at the sedentary level (C4F), but this opinion is not consistent with his own exam notes (C11F:2-14; C14F; C18F) and is therefore not persuasive.

R. 19-20.

Despite the ALJ's significant consideration of the record evidence, Plaintiff complains that the ALJ deviated from the medical opinions and administrative medical findings in determining Plaintiff's RFC is not supported by substantial evidence.  Br. at 7.  But Plaintiff's position is not supported by case law, which makes clear that it is "[t]he ALJ—not treating or examining physicians or [s]tate agency consultants—must make the ultimate disability and RFC determinations."  *See Yomaira M. v. Kijakazi*, 2022 U.S. Dist. LEXIS 152987, at *46 (D.N.J. Aug. 25, 2022) (citing *Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 685 (E.D. Pa. 2018); *Chandler*, 667 F.3d at 362) (citations and quotation marks omitted).  "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."  *Titterington v.*

*Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2011); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d

Cir. 2003); *Brown v. Astrue*, 649 F.3d 193, 196 n.1 (3d Cir. 2011).   Additionally, an RFC

determination "'is an administrative finding on an issue reserved to the Commissioner,' and is not

a medical diagnosis or assessment." *Soto v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 4621, at

*9 (D.N.J. Jan. 10, 2018) (citing *Title II & XVI: Medical Source Opinions on Issues Reserved to

the Commissioner*, SSR 96-5p, 1996 SSR LEXIS 2 (July 2, 1996)).

Here, the ALJ found the state agency consultants' conclusion, that Plaintiff could do light

work, unpersuasive.  R. 20; *see also* R. 79-80, 88.  Also unpersuasive to the ALJ was Dr. Yorio's

conclusion that Plaintiff could do nothing whatsoever because it was "not consistent with [Dr.

Yorio's] own exam notes." *Id.*; *see also* R. 451-56.  Instead, the ALJ concluded that Plaintiff was

limited to a reduced range of sedentary work.  R. 18.

Each of the findings that the ALJ made in determining Plaintiff's RFC is supported by the

record.   Specifically, the ALJ noted that many of Plaintiff's physical impairments were

conservatively managed with medication and that many his issues were controlled and/or

asymptomatic.  R. 18.   The ALJ also noted that a June 2015 MRI showed mild spondylitic

degenerative changes in Plaintiff's cervical spine, but that a December 2019 evaluation found that

Plaintiff had a normal gait, no difficulty getting on and off the examination table, was able to put

weight on one leg at a time if he held on to a table, was able to bend at the waist about 60-65

degrees and halfway at the knee, but did not walk very well on his heels or toes, and had positive

straight leg raising tests on both legs.  R. 17-18, 504-06, 709-10.  The ALJ also pointed to the

inconsistency between Dr. Yorio's conclusion that Plaintiff could essentially do nothing with his

exam notes that did not identify numerous substantial issues; for example, while Dr. Yorio did

note that Plaintiff had a limping gait and tenderness in the paraspinal muscles, many of his notes

also indicated that Plaintiff had a normal range of motion, intact sensation, normal reflexes, full strength, and that Plaintiff exercised three times per week.  R. 18, 435, 439, 443, 446, 449, 699, 702, 705, 1005, 1079, 1082, 1085, 1088, 1092.

Additionally, the ALJ noted that pulmonary testing was consistent with moderate asthma and that Plaintiff was diagnosed with hypertension, but without any complications.  R. 18, 439, 446, 449, 509-14, 699, 702, 1079, 1082, 1085, 1088, 1092.  With respect to Plaintiff's diabetes, the ALJ noted just one episode of hypoglycemia in 2018 when Plaintiff was not taking his medication.  R. 18, 434-35, 438-39, 442-43, 445-46, 448-49, 699, 702, 705, 1005, 1079, 1082, 1085, 1088, 1092.  The ALJ also considered that Plaintiff's obesity to limit Plaintiff to sedentary work.  R. 18, 1079, 1082, 1085, 1088, 1092.

Next, the ALJ recognized that while Plaintiff was diagnosed with a pericardial effusion with complaints of chest pain that cardiac testing in January 2019 was normal.  R. 18, 711, 1078, 1081, 1087.  The ALJ also noted that Plaintiff's right fibular fracture had healed and Plaintiff exhibited a steady gait as of September 2020.  R. 18, 1118-19.  Also, the ALJ found that Plaintiff would need access to a bathroom at work because of his colitis and reported right flank pain and constipation.  R. 18, 1101-03, 1126-27.

Furthermore, the Court notes that Plaintiff's cited case law is distinguishable.  In *Shannon v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS, at \*41, 53 (D.N.J. Sept. 20, 2016), the Court remanded the case to the ALJ because the ALJ did not provide any "medical or other evidence" supporting his determination that the claimant could sit for up to six hours per day with breaks, could handle low stress work, and would only be off task five percent of the workday.  In contrast, as detailed in the preceding paragraphs, the ALJ here gave significant consideration to each of Plaintiff's impairments and relied on the record in determining Plaintiff's RFC.

23

Accordingly, considering the ALJ's clear reliance on the record evidence to determine Plaintiff's RFC, the Court finds that the ALJ's determination is consistent with and substantially supported by the record evidence.

## VI.   CONCLUSION

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision.   An appropriate Order accompanies this Opinion.

Dated: December 20, 2022

_____
Hon. Evelyn Padin, U.S.D.J.